## N. B. LANIER v. STEPHEN S. BOOTH et al.

1. CHANCERY COURT — INJUNCTION — RIGHT OF WAY — EASEMENT. — A right of way is the privilege which an individual or particular description of individuals have of going over another's grant. It is an incorporeal hereditament of a real nature, entirely different from a common highway. It may be either a right in gross, which is purely a personal right incommunicable to another, or a right appendant or annexed to an estate, and which may pass by assignment with the estate to which it is appurtenant.

2. SAME — SAME — MODES OF ACQUIRING EASEMENT. — There are three modes in which easements may be acquired, namely, by express grant, implied grant, and prescription, which presupposes a grant to have existed. The existence of the grant may be established by the production of a deed expressly declaring it, or may be inferred by construction from the terms of an existing deed, or evidence of the grant may be derived from its having been so long enjoyed as to be regarded as proof that a grant was originally made, though no deed is produced which contains it.

3. SAME — SAME — MODE OF CREATING AN EASEMENT. — An easement may be created, or reserved by an implied grant, when its existence is necessary to the enjoyment of that which is expressly granted or reserved, upon the principle that where one grants anything to another, he thereby grants him the means of enjoying it, whether expressed or not: thus, if A. sells to B. a parcel of land, surrounded by other lands, and there is no access to the granted premises, but over his own, he gives the purchaser a right of way, by implication, over his own land to that which he has granted.

4. SAME — SAME — RIGHT OF WAY BY PRESCRIPTION — LENGTH OF TIME
REQUIRED. — Originally the time required for gaining a right of way by
prescription, began from some time anterior to the memory of man; this
was fixed at the commencement of the reign of Richard I. This was
open to be rebutted by proof, and to avoid it, the courts adopted a notion
of presuming ancient grants, till it became a settled principle of the
common law, that such an enjoyment for the term of twenty years raises
a legal presumption that the right was originally acquired by title.  2
Washburn on Real Property, 293.

5. SAME — SAME — THE RIGHT MUST BE EXERCISED ADVERSELY. — It must
be adverse to that of the owner of the servient estate, since no length of
enjoyment by his permission, and under a recognition of his right to
grant or withhold it, at his pleasure, will ripen into an easement.

6. SAME — SAME — CASE IN JUDGMENT. — Where the case comes within these
rules, and the dominant and servient estates are contiguous to each other,
and the parties are owners respectively, and that the enjoyment has been
notorious, uninterrupted and adverse, the *fee* will be presumed, and the
easement will be protected by the court.

APPEAL from the Chancery Court of Warren County.   Hon.
E. HILL, Chancellor.

Appellees filed their bill in the chancery court of Warren coun-
ty, February 28, 1871, alleging, substantially, that they are the
owners, and have occupied certain lands in said county since 1837,
and have had the continuous and uninterrupted possession of the
right of way over a small tract of land lying contiguous thereto,
now owned by the defendant, N. B. Lanier, that the land they
now own was owned by one Nathan White in 1810, next by Ed-
ward Mitchell, next by Wiley Boleman, then by C. H. Edwards,
from whom your orators purchased in 1837 ; that all the prior
owners from 1810 down to 1837, and your orators from 1837 to
the present date, have had the continuous and uninterrupted pos-
session of the said right of way; that all the successive owners of
the said lands now owned by the said Lanier from the year 1826,
together with the said Lanier, have acquiesced in the enjoyment
of the said easement until the 15th day of February, 1871, when
the said Lanier notified complainants, by letter, that they must
change the road aforesaid or within thirty days from that time he

would close the said road himself; that he has now run his fence up to the road on either side, and they are satisfied from the indications, that he intends to and will carry his threats into execution, unless restrained, etc. That the object of defendant is to annoy and inconvenience complainants. They insist that they have an indefeasible title to said right of way by prescription and the lapse of time, and that the defendant purchased the said land subject to the said right of easement, and they pray for an injunction restraining defendant, etc., which was granted, and upon the final hearing of the cause, the injunction was made perpetual by decree of the court and the case is brought to this court on appeal.

*Buck & Clark*, for appellants, contended :

That the bill did not make out a case of prescriptive right, so that the statute of limitations would apply ; nor does their bill charge that they have enjoyed an *adverse* and *exclusive* user of the private right of way claimed, for any length of time. 11 Gill., 371 ; Magee v. Magee, 37 Miss., 138 ; Ford v. Wilson, 35 Miss., 490 ; Adams v. Guice, 30 Miss., 397.

2. That if the user of the easement was by license or permission of the owner, no length of time through which such user might run would support the use as a matter of right.

*R. V. Booth*, for appellees, contended :

1. That the chancellor did not err in granting the injunction nor in overruling the motion to dissolve it, and cited the following authorities in support thereof. 2 Story Eq. Jur., § 901 to § 935 ; Adams' Eq., p. 415 ; Osborn et al. v. United States Bank, 9 Wheat., 766 ; High on Inj., p. 316 ; Shipley v. Caples, 17 Md., 179.

2. That the chancellor did not err in the decree perpetuating the injunction, because the appellees had had the continuous and uninterrupted use and enjoyment of this way and the exclusive control thereof for a period extending over more than thirty years, and the former owners of the land had the use and enjoyment of said way for fourteen years, thus ripening and maturing appellee's

title to the easement before appellants became the owner of the land over which the road passes, and cited 3 Kent's Com., p. 575; Hammond v. Zehner, 23 Barb. 473; Shaw v. Crawford, 10 Johns., 236; Miller v. Garlock, 8 Barb., 153; Lansing v. Wiswall, 5 Denio, 213.

PEYTON, C. J., delivered the opinion of the court.

This is an appeal from the decree of the chancery court of Warren county, perpetuating an injunction restraining the appellant from obstructing the appellees' right of way over a small portion of his land.

This is believed to be the first instance in this state in which the doctrine of the right of private way has been invoked. The law, however, on this subject, it must be conceded, is ancient and well settled.

A right of way is the privilege which an individual, or a particular description of individuals, as the inhabitants of a village, or the owners or occupiers of certain farms, have of going over another's ground. It is an incorporeal hereditament of a real nature, entirely different from a common highway. It may be either a right in gross, which is purely a personal right incommunicable to 'another, or a right appendant or annexed to an estate, and which may pass by assignment with the estate to which it is appurtenant.

There are three modes in which easements may be acquired, namely: by express grant, implied grant, and prescription, which, indeed, presupposes a grant to have existed. But this is, in effect, merely saying that an easement, being an interest in land, can be created only by grant, the existence of which may be established by production of a deed expressly declaring it, or may be inferred, by construction, from the terms and effect of an existing deed, or evidence of the grant may be derived from its having been so long enjoyed as to be regarded as proof that a grant was originally made, though no deed is produced which contains it. In

case of an express grant, the fact of the creation of the easement, as well as its nature and extent, is determined by the language of the deed, taken in connection with the circumstances existing at the time of making it. An easement may be created or reserved by an implied grant when its existence is necessary to the enjoyment of that which is expressly granted or reserved, upon the principle, that where one grants any thing to another, he thereby grants him the means of enjoying it, whether expressed or not. Thus if A. sells to B. a parcel of land surrounded by other lands, and there is no access to the granted premises but over his own, he gives the purchaser a right of way, by implication, over his own land to that which he has granted.

It may be here remarked that the right of way under consideration is appurtenant to the dominant estate, and in all such cases, a conveyance of that estate carries with it, as before stated, the easement belonging to it, whether mentioned in the deed or not. 2 Washburn on Real Estate, 279.

The case at bar involves the length of time the use has been enjoyed, the mode and extent in which it has been applied, and how there has been an acquiescence on the part of the owner of the servient estate which is adversely affected by such user. Originally, the time required for gaining a right by prescription, began from some point anterior to the memory of man. And this was, at one time, fixed at the commencement of the reign of Richard I. But as it was always open to be rebutted by proof that the use did begin within the period of memory, the courts, to avoid this, and to sustain privileges which had been enjoyed, adopted the notion of presuming an ancient grant by deed which had been lost, from a period of enjoyment, the length of which was in some measure governed by the term adopted as a bar to the claim of land itself, till it became a settled principle of the common law, that such an enjoyment for the term of twenty years raises a legal presumption that the right was originally acquired by title. 2 Washburn on Real Property, 293. The period

of twenty years has been adopted by the courts in analogy to the statute limiting the entry into lands, but as the statute does not apply to incorporeal rights, the adverse use is not regarded as a legal bar, but only a ground for presuming a right either by grant or in some other form. The occupation, in such cases, is not conclusive, but it is evidence which is open to be rebutted by evidence on the other side. Whatever discrepancy there may be between the language of the different cases, it will probably be found to have arisen from the courts not making a distinction between the ancient doctrine of prescription which was, from its very nature conclusive, as it went back beyond the period of evidence, and the modern doctrine of prescription, which is another name for presumption, and which, like all legal presumptions of evidence, is subject to be negatived or controled by other evidence.

As user becomes so important in determining questions of prescriptive right, the law has been careful in defining the circumstances which must concur in connection with the actual enjoyment of any of these privileges, called easements, to give them the legal character and incidents of an easement. To give a user this effect, it must be uninterrupted in the land of another, by the acquiescence of the owner, for a period of at least twenty years or the period of limitation of a right of entry into land of the state where the land lies, under an adverse claim of right. While all persons concerned in the estate, in or out of which it is derived, are free from disability to resist it, and are seized of the same in fee and in possession during the requisite period, where all these circumstances concur, it raises a *prima facie* evidence of a right to such easement acquired by a grant which is now lost.

Many of the cases make use of the term "adverse enjoyment," which is substantially the same as its being enjoyed under a claim of right against the owner of the land, out of which the easement is derived. And all the cases concur in the doctrine that the right must be exercised adversely to that of the owner of the servient estate, since no length of enjoyment by his permission, and

under a recognition of his right to grant or withhold it, at his pleasure, will ripen into an easement. The adverse enjoyment, to confer a right of way, must be open, notorious and uninterrupted for the period required by the law. But it is no objection that the user began in trespass. Sibley v. Ellis, 11 Gray, 417. And it has been held, that the mere passing across open, uninclosed land would not gain a right of way without something to show that, by so doing, a right to such use was asserted, such as working upon the road and keeping it in repair under a notorious persistent claim of a right of way. 2 Washburn on Real Property, 298.

If the foregoing view of the law of easements in relation to the right of way be correct, have the appellees brought themselves within it, and established their claim to the right of way in controversy? We think they have.

It appears from the testimony that the dominant and servient estates were contiguous to each other. And as the parties to this suit are shown by the evidence to be the *owners* respectively of these estates, we are to presume that the appellees are seized *in fee* of the dominant estate, and that the appellant is seized *in fee* of the servient estate. It is proved that the appellees have been in the open, notorious, uninterrupted adverse use, possession and enjoyment of the road, over which they claim a right of way, for a period of about thirty years, during which, at various times, they have wrought upon and kept the same in repair. This, it is believed, entitles them to the right of way claimed in their bill.

The decree must, therefore, be affirmed. ⌣