831 So.2d 1205 (2002)
Billie Ruth Blakeney RAWLS and Husband, Dewayne Rawls, Appellants,
v.
Dora Faye H. BLAKENEY and Joe Peale Blakeney, Appellees.
No. 2001-CA-01027-COA.
Court of Appeals of Mississippi.
December 3, 2002.
*1206 Eugene Coursey Tullos, Mark K. Tullos, Raleigh, for Appellants.
David Garner, Batesville, Attorney for Appellees.
Before KING, P.J., IRVING, and BRANTLEY, JJ.
BRANTLEY, J., for the Court.
¶ 1. Ruth Blakeney Rawls and Dewayne Rawls (Rawlses) appeal from an order of the Smith County Chancery Court granting a prescriptive easement in a road partially traversing across their property to Dora Faye H. Blakeney and Joe Peale Blakeney (Blakeneys). The Rawlses assert the following assignment of error:
I. WHETHER THE CHANCELLOR ERRED IN GRANTING A PRESCRIPTIVE EASEMENT TO THE BLAKENEYS FOR THE PURPOSE OF INGRESS AND EGRESS UNTO THEIR PROPERTY.
Finding no error in the proceeding below, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. The Blakeneys own an eighty acre parcel of land in Smith County, Mississippi which is accessed by an east to west road from Highway 37. From Highway 37 to the Blakeneys's property, this road runs over and across two adjacent parcels of property belonging to the Rawlses on the north side and Larry J. Loftin and Paula C. Loftin (Loftins) on the south side. Use of this road by the Blakeneys to access their property serves as the basis for the underlying conflict in this appeal.
¶ 3. The uncontradicted evidence shows that beginning at least as early as 1947, the road was used as a means of ingress and egress to and from the Blakeney property. The evidence also shows that the road is the only safe and reasonable means available to access the Blakeney property. The Blakeneys use this property for logging and recreational purposes.
¶ 4. The Rawlses purchased the property located on and to the north of the access road in 1994 from Jaunita Armour and later began residing there in 1995. Around this time, the Rawlses objected to the Blakeneys's use of the road. Subsequently, *1207 the Blakeneys continued to use the road in question to access their property and on April 24, 1998, they filed a petition for easement by prescription seeking to establish their right to use the access road that ran along and over the property of the Rawlses and the Loftins.
¶ 5. The Rawlses filed an answer to the petition, but no answer or response was filed by the Loftins. The Loftins did not object in any manner to the petition filed by the Blakeneys and on June 10, 1999, a default judgment was entered awarding a prescriptive easement to the Blakeneys for use of the road situated on the land owned by the Loftins.
¶ 6. On January 12, 2000, a hearing was held concerning the use of the road situated on the property owned by the Rawlses. After the hearing, in an order entered on May 30, 2001, the chancellor granted a prescriptive easement to the Blakeneys for use of the road that is situated on the Rawlses's property. In the brief order, the chancellor stated that because the public used the private road, "a prescriptive easement has been established and therefore a prescriptive easement is hereby granted [to the Blakeneys] on said road for the purposes of ingress and egress unto their property."

STANDARD OF REVIEW
¶ 7. This Court will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. Denson v. George, 642 So.2d 909, 913 (Miss.1994). When substantial evidence exists in the record to support the chancellor's findings of fact, those findings must be affirmed. Id. However, questions of law will be reviewed de novo. Holliman v. Charles L. Cherry & Assoc., Inc., 569 So.2d 1139, 1145 (Miss.1990).

DISCUSSION
I. WHETHER THE CHANCELLOR ERRED IN GRANTING A PRESCRIPTIVE EASEMENT TO THE BLAKENEYS FOR THE PURPOSE OF INGRESS AND EGRESS UNTO THEIR PROPERTY.
¶ 8. In order to establish an easement by prescription, the claimant has the burden of proving that the use of the land is (1) open, notorious and visible; (2) hostile; (3) under a claim of ownership; (4) exclusive; (5) peaceful; and (6) continuous and uninterrupted for ten years. Myers v. Blair, 611 So.2d 969, 971 (Miss.1992). In the order, the chancellor did not state any specific findings of fact concerning these six elements. Where the chancellor has made no specific findings, the Mississippi Supreme Court has held that "we will proceed on the assumption that he resolved all such fact issues in favor of the appellee." In Re Estate of Johnson, 735 So.2d 231, 236 (¶ 24) (Miss.1999). Therefore, in the present case, we proceed on the assumption that the chancellor found that the evidence satisfied these required elements of a prescriptive easement in favor of the Blakeneys.
¶ 9. The Rawlses first assert that the chancellor erred because the Blakeneys allegedly failed to prove the following three of the six required elements of a prescriptive easement: (1) hostile, (2) under a claim of ownership, and (3) continuous and uninterrupted for ten years. The Rawlses do not dispute the finding that the other three elements were satisfied; therefore, we will only address the disputed elements. To determine whether these three disputed elements were satisfied, we review the evidence presented to support each in the record before us. We must accept "that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable *1208 inferences which may be drawn therefrom and which favor the lower court's findings of fact." Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983). "That there may be other evidence to the contrary is irrelevant." K-Mart Corp. v. Hardy ex rel Hardy, 735 So.2d 975, 987 (¶ 36) (Miss.1999); Johnson, 735 So.2d at 236 (¶ 24).

(1) Hostile
¶ 10. In order for this element to be satisfied, the use must have been continuously adverse for a term of ten years. See Gano v. Strickland, 211 Miss. 511, 515-16, 52 So.2d 11,12 (1951). Since the Rawlses purchased the property and objected around 1995, ten years of continuous adverse use has not passed. Although the time limit has not been satisfied during the Rawlses's ownership, according to Rutland v. Stewart, 630 So.2d 996, 999 (Miss. 1994), we may apply the doctrine of tacking to satisfy the prescriptive period of ten years. Rutland allows us to tack the time period from the previous owners in privity of the property in question, Jaunita Armour and, if needed, Mr. Corb, from whom Juanita received title, to the current owner, the Rawlses, if the Blakeneys's continuous use of the road while Armour and, if needed, Corb, owned the property was adverse or without permission. Id. However, tacking the time period of the Rawlses to the previous owners may not need to be applied if the ten year prescriptive period of adverse use had already been satisfied while Armour or Corb owned the property. If the right was acquired while the previous owners held title, then the easement will run with the land and be enforceable against the Rawlses. In Logan v. McGee, the Mississippi Supreme Court held that a prescriptive right to an easement is the equivalent to a deed conveying such right. Logan v. McGee, 320 So.2d 792, 793 (Miss. 1975). If an easement by prescription is equivalent to the conveyance of such right by deed, then it follows that such an easement by prescription will run with the land. Id.
¶ 11. The Rawlses claim that the Blakeneys failed to satisfy the requirement of hostile use for ten years because, prior to their objection around 1995, the Blakeneys had permission to use the road. The Mississippi Supreme Court has held that "use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since adverse use, as distinguished from permissive, is lacking." Sharp v. White, 749 So.2d 41, 42 (¶ 8) (Miss.1999).
¶ 12. We now look to see whether the record supports the finding that the Blakeneys's use of the road was without permission. Ironically, Mr. Rawls testified that Armour, the previous owner of his property, specifically told him that she did not allow anyone to use the road, particularly the Blakeneys. More importantly, Armour testified that she did not give permission to the Blakeneys to cross her property to access their land. Furthermore, Armour testified that while Mr. Corb owned the land and after, while she owned the land, the Blakeneys accessed their property by crossing her land. In addition, she also testified that while she owned the property, the Blakeneys used the road to access their property because "they had to." Therefore, the record supports that the Blakeneys openly used the road without permission while Armour held title.
¶ 13. Although, we have established that the use by the Blakeneys was adverse while Armour owned the property, our analysis does not end here. We must now look to see whether the prescriptive time period of ten years was satisfied while Armour owned the property or by tacking *1209 her time period with the other owners in privity, either Corb or the Rawlses. The record before us is not clear on how long Armour owned the property. There are also no title or property records provided to clarify the dates of ownership. At one point, Armour testified that she was not sure how long she possessed title to the property and at another point she stated possibly two years or three years, and possibly even longer. Thus, the testimony does not clarify whether the adverse use satisfied the prescriptive period of ten years either while she owned the property or by tacking her time along with the Rawlses. Therefore, we next look to the evidence provided to see if the Blakeneys's use was adverse for the prescriptive period when either Mr. Corb owned the property or by tacking Corb's ownership period with Armour's possible claimed ownership of two or three years.
¶ 14. Upon review, the record also does not provide evidence of the dates that Corb owned the property or whether the Blakeneys's use of the road was adverse or not while Corb owned the property. The record only contains evidence from Armour's testimony and the Blakeneys's that the Blakeneys also used the road to access their property while Mr. Corb was the owner. Mrs. Blakeney testified that she, along with her father, started using the road when he purchased the property around 1947. Where "a use of the lands of another for roadway purposes has been open, visible, continuous and unmolested since some point in time anterior to the memory of the aged inhabitants of the community, such use will be presumed to have originated adversely." McCain v. Turnage, 238 Miss. 44, 46, 117 So.2d 454, 455 (1960). In the present case, the testimony does not clarify whether their use was hostile or permissive at that time, but does show that they used the road to access their property for as long as anyone could remember. In such a situation, we think that the presumption of hostility from McCain, unrebutted by any evidence to the contrary, operates to establish hostility. Furthermore, this Court in Morris v. W.R. Fairchild Const. Co., 792 So.2d 282 (¶ 10) (Miss.Ct.App.2001), stated that the majority of jurisdictions recognizes a presumption of adverse use once evidence has shown use of the property for the prescriptive period. In the present case, according to the record before us, the use of the road by the Blakeneys has been open, visible, continuous, and unmolested since as long as those involved can remember. In addition, "[r]equiring a litigant who is attempting to establish adverse possession or a prescriptive easement to prove that there was no permission for use would be unreasonable. The law typically frowns upon requiring a party to prove a negative." Morris, 792 So.2d at 284 (¶ 9). Therefore, because of the evidence presented, we find that the use of the road originated adversely around 1947 and the ten year statutory requirement of adverse use was satisfied well before the Rawlses owned the property. Thus, the record supports the finding that the Blakeneys's use of the road was hostile for the required prescriptive period.

(2) Under claim of ownership
¶ 15. The record reveals that the Blakeneys operated under a claim of ownership in regard to the passageway. As stated, the Blakeneys have testified that they used this road as the only safe and reasonable means of access to their property since at least as early as 1947. Mr. Blakeney testified that for the last thirty years he had maintained the road by adding gravel, keeping the ditches clean, bush-hogging the sides, and installing two culverts. Mrs. Blakeney also testified that she worked with her husband and used *1210 personal funds in maintaining the road. Mr. Blakeney also testified that he told the Rawlses that he had a right to use it and Mr. Rawls testified that Mr. Blakeney stated that he already had an easement. Furthermore, guests of the Blakeneys used the road to access the Blakeney property. Therefore, the record supports the finding that the Blakeneys clearly operated under a claim of ownership.

(3) Continuous and uninterrupted for ten years
¶ 16. Mrs. Blakeney used the road continuously and uninterruptively from the time she began traveling with her father to their property in 1947 until the Rawlses objected around 1995. Mr. Blakeney used the passageway continuously and uninterruptively from 1969, around the time when he married Mrs. Blakeney, until the present for logging and recreational purposes. Although the Blakeneys did not use the road on a daily basis, the uncontradicted evidence in the record provides that they did use the road to access their property as normal land owners would use it, as their business or pleasure required. The Mississippi Supreme Court in Browder v. Graham, 204 Miss. 773, 780, 38 So.2d 188, 189 (1948), held that "it is not necessary, in order to establish an easement by prescription, that the way has been in constant use, day and night, but it may be established by such use as business or pleasure may require." Therefore, in the present case, the record supports a finding that the ten year requirement of continuous use was satisfied before the Rawlses purchased their property.
¶ 17. The Rawlses's next assertion in this assignment of error is that the chancellor used an improper standard. The Rawlses claim that the chancellor incorrectly applied the public's use of the road as the standard for finding that a prescriptive easement had been established. It is not clear from the order whether this was the sole standard used or simply evidence of hostile use and the deciding factor for finding that an easement had been established. Regardless, we have already determined that the record supported the finding that the Blakeneys met the requirements to establish a prescriptive easement; and therefore, find it is unnecessary for this Court to address this second assertion.

CONCLUSION
¶ 18. In Logan v. McGee, 320 So.2d 792, 793 (Miss.1975), the Mississippi Supreme Court held that a prescriptive right to an easement is equivalent to a deed conveying such right, and that proper acquisition of the right is presumed from adverse and continuous enjoyment of a right-of-way for the ten year period. In the present case the record contains evidence to support that the Blakeneys used the access road in an adverse manner continuously to their benefit for over ten years. The record supports the finding that all of the elements of a prescriptive easement have been satisfied. Therefore, we cannot conclude that the chancellor's finding that a prescriptive easement had been established is in error; thus, we must affirm. Denson v. George, 642 So.2d 909, 913 (Miss.1994).
¶ 19. THE JUDGMENT OF THE SMITH COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.